INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE and AGRICULTURAL IMPLEMENT WORKERS of AMERICA, UAW, Appellant,

v.

MACK TRUCKS, INC.

No. 86–1565.

United States Court of Appeals, Third Circuit.

Argued March 16, 1987.

Decided June 5, 1987.

Richard H. Markowitz (argued), R. David Walk, Jr., Philadelphia, Pa. (Jordan Rossen, Gen. Counsel, Leonard R. Page, Associate Gen. Counsel, International Union, United Auto., Aerospace and Agr. Implement Workers of America—UAW, Detroit, Mich., of counsel), for appellant.

Carol A. Mager (argued), Maureen M. Rayborn, Montgomery, McCracken Walker & Rhoads, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM, MANSMANN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This matter comes before us on appeal from an order of the district court which granted the motion of the defendant, Mack Trucks, Inc. ("Mack"), for a directed verdict in this action by the plaintiff—International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW ("UAW" or "the Union") —to enforce the parties' collective bargaining agreement pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1982). The district court concluded as a matter of law that "[t]he Union has failed to demonstrate that its members have been harmed by Mack's technical violation of the contract" and, therefore, refused to issue a permanent injunction in the Union's favor. *UAW v. Mack Trucks, Inc.*, No. 85–7417, slip op. at 9 (E.D.Pa. Aug. 28, 1986) (hereinafter "slip op.") [Available on WESTLAW, DCT database]. We possess jurisdiction pursuant to 28 U.S.C. § 1291 (1982). We agree with the district court that Mack's decision to change unilaterally the health insurance carrier for its employees violated Mack's collective bargaining agreement with the UAW. We find, however, that the Union carried its burden of proving irreparable harm. Because the district court rested its directed verdict and consequent denial of injunctive relief on an erroneous finding of ultimate fact, we will vacate the judgment of the district court and will remand this case for further proceedings.

## I.

The collective bargaining agreement between the Union and Mack provides that Mack will pay for health insurance benefits to its union employees. Prior to 1984, the parties had specified Blue Cross/Blue Shield as the health insurance carrier. However, during negotiations in 1984, officers and employees of the Union expressed to Mack officials that some union members were dissatisfied with Blue Cross/Blue Shield. The UAW subsequently proposed a means to permit Mack to replace the health insurance carrier under certain conditions during the term of the new contract. According to the Union, it suggested the proposal in order to secure better quality health insurance services for the UAW membership while simultaneously precluding Mack from modifying unilaterally the terms of the benefits package.

Under the UAW's plan, the parties would detail the terms and conditions of the health insurance program which the carrier would provide. Although Mack initially responded favorably to the Union's offer, the parties failed to reach an agreement. Mack then offered to continue the terms and conditions of the existing health insurance program with a carrier of Mack's choosing. The Union countered with the following:

> The terms and conditions of coverage, including those amendments made in these negotiations, are continued on the assumption that the current arrangement with Blue Cross/Blue Shield will continue for the term of the labor agreement. The Company shall not exercise its option to select an alternate *delivery system* until the parties have reached mutual agreement on the terms and conditions including restrictions, limitations and definitions that would be applicable to any *delivery system* other than Blue Cross/Blue Shield.

On November 7, 1984, the parties initialed this proposal which became part of Appendix B to their master labor agreement effective October 30, 1984.

On June 11, 1985, the UAW–Mack Benefits Committee met to discuss health insurance benefits issues. Mack advised the Union that, *inter alia*, Mack was soliciting bids from various health insurance plans. Union representative Jack Derry thereupon reminded Mack's representatives that the parties had to agree mutually on the terms and conditions of any delivery system before Mack could select a provider other than Blue Cross/Blue Shield. Nonetheless, Mack's Dennis Guinan informed the Union at a meeting in Detroit on November 4, 1985 that Mack had tentatively selected the Equitable Life Assurance Society ("Equitable") to assume the insurance program on January 1, 1986. The Union again objected.

On November 18, 1985, the parties met at Equitable's Regional Benefits Center in Columbus, Ohio. At that meeting, the Union asked Mack to delay implementing the conversion to Equitable, since the UAW required more time to study the change and to resolve pertinent unanswered questions. The Union also stated that Mack's decisions to close its Allentown, Pennsylvania plant and to outsource work from its Hagerstown. Maryland facility demanded the Union's immediate attention. Mack nonetheless sent the Union a letter on December 6, 1985 addressing questions raised at the Columbus meeting. Three days later, Mack formally notified the UAW that effective January 1, 1986 Mack "will exercise its option ... to replace the present insurance carriers for our group insurance coverage under the Agreement with Equitable."

Union representatives immediately presented written grievances to Mack on December 10 and 16, 1985 protesting its actions. Again on December 16, 1985, the UAW by letter reminded Mack of the requirement in Article I, Section 2 of the insurance agreement that Mack could not change insurance carriers until "the parties have reached mutual agreement on the terms and conditions including restrictions, limitations and definitions that would be applicable to any [other] *delivery system* ...." The UAW further pledged to meet with Mack "at the earliest possible mutually convenient time" to resolve these issues.

On December 19, 1985, Mack responded to the Union's letter and indicated that the terms and conditions of the UAW's existing insurance coverage would not be reduced with Equitable. Mack offered, accordingly, to furnish the UAW with a comparative breakdown of the Blue Cross/Blue Shield and Equitable plans by February 15, 1986 and to answer the Union's questions in the interim. The Union responded by filing a complaint and a motion for a preliminary injunction on December 26, 1985 to stop Mack from switching to Equitable.

On December 30, 1985, the parties entered into a stipulation and order whereby the plaintiff withdrew its motion for a preliminary injunction. In return, the defendant formally promised to provide a complete comparative breakdown of the two insurance programs, to which the UAW would respond in writing. The parties additionally agreed to discuss outstanding problems until the date of trial, if trial proved necessary. On January 1, 1986, Mack replaced Blue Cross/Blue Shield with Equitable.

Mack sent to the Union a "Comparative Document for the Mack-UAW Insurance Program" on January 17, 1986. The UAW responded ten days later with a request for additional documents by which to compare the old and new insurance plans. On January 31, 1986, the parties met to discuss inadequacies which the Union found in the comparative breakdown. Mack and the UAW continued to exchange correspondence throughout the ensuing two months.

Finally, on April 21, 1986, the Union notified Mack that the Union would not accept the terms and conditions of coverage with Equitable. Moreover, the UAW reiterated its "principal concern" that "the Company does not have the right under the terms of the collective bargaining agreement to make a change in insurance carriers in a unilateral fashion without the agreement and consent of the Union."

On August 19 and 20, 1986, the district court held a non-jury trial on the Union's complaint and accompanying request for a permanent injunction to require Mack to reinstate the Blue Cross/Blue Shield health insurance plan. At the close of the plaintiff's case, Mack moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a). The defendant argued that the UAW had failed to prove that Mack had breached the collective bargaining agreement and that, in any event, the Union had not shown irreparable harm as a result of the change from Blue Cross/Blue Shield to Equitable. The Union responded that it need not demonstrate irreparable harm to obtain a permanent injunction; rather, it had to (and did) prove a breach of the collective bargaining agreement and a balance of the equities favoring the relief sought. In rebuttal, Mack urged that the terms and conditions of the two insurance plans were identical and that the Union had suffered no harm from Mack's actions.

The district court granted the motion for a directed verdict. The court found that "at best the union has established a technical violation of the collective bargaining agreement." The UAW also failed, in the court's view, to show that any substantial benefit would result from a permanent injunction in its favor. In a subsequent written opinion, the district court "agree[d] with the UAW that Mack failed to comply with the provisions of the insurance program agreement, but [did] not find that the balance of the equities tips in favor of an injunction." Slip op. at 6. The Union's timely appeal followed.

## II.

On appeal, the Union argues that the district court erred in granting Mack's motion for a directed verdict, since sufficient evidence of substantial harm to the Union as a result of Mack's breach of the collective bargaining agreement existed in the record to support the issuance of a permanent injunction. The Union accordingly asks us to direct the district court to grant the Union's motion for injunctive relief.

■ We generally measure a trial court's grant or denial of a motion for an injunction by an abuse of discretion standard. We more closely review decisions on requests for permanent rather than for

preliminary relief, however, since permanent injunction cases present more fully developed records. *See International Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 737, *amended at* 789 F.2d 1319 (9th Cir.), *and cert. granted*, —— U.S. ——, 107 S.Ct. 312, 93 L.Ed.2d 286 (1986); *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir.1982). An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact. *See International Olympic Comm.*, 781 F.2d at 738.

■ Here, the district court labeled Mack's violation of the collective bargaining agreement merely "technical" as a matter of law. This conclusion represents a finding of "ultimate fact" since harm is requisite to the merits of the Union's claim and, therefore, to the injunction itself. *See CIBA–GEIGY Corp. v. Bolar Pharmaceutical Co.*, 747 F.2d 844, 850 (3d Cir.1984), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). In reviewing the ultimate issue of harm

> as an appellate court, we are therefore not limited by the "clearly erroneous" standard, [citation omitted], but must employ a mixed standard of review. We must accept the trial court's findings of historical or narrative fact unless they are clearly erroneous, [footnote omitted] but we must exercise a plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts. [Citations omitted.] Thus we separate the distinct factual and legal elements of the trial court's determination of an ultimate fact and apply the appropriate standard to each component.

*Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981). In order for harm to warrant a permanent injunction, of course, the plaintiff must show the lack of an adequate remedy at law.

### III.

■ Mack appears to concede that it (in the district court's words) "breached the collective bargaining agreement by changing its health insurance carrier from Blue Cross/Blue Shield to Equitable without the consent of the UAW." Slip op. at 9. We, therefore, find it beyond dispute that Mack indeed violated its contract "not [to] exercise its option to select an alternate *delivery system* until the parties have reached mutual agreement on the terms and conditions including restrictions, limitations and definitions that would be applicable to any *delivery system* other than Blue Cross/Blue Shield." We need only to decide the legal question of whether the Union adduced evidence of harm sufficient to make out a *prima facie* case and, therefore, to avoid a directed verdict.

### A.

■ We find as a matter of law that the district court erred in holding that Mack's breach of the collective bargaining agreement has not harmed the Union.

Article I, Section 2 of the collective bargaining agreement as amended requires the Union to agree to proposed terms and conditions before Mack is able to substitute another health insurance carrier for Blue Cross/Blue Shield. Nothing in that provision, however, empowers Mack to force the Union to accede to "an alternate delivery system," even if its terms and conditions surpassed those which the Union enjoyed with Blue Cross/Blue Shield. The UAW thus possessed a bargaining chip which the Union might trade for other benefits from Mack. By unilaterally replacing Blue Cross/Blue Shield with Equitable, Mack deprived the union of its bargaining chip. The district court's holding that Mack had not harmed the UAW overlooks the importance of the "mutual agreement" provision to the collective bargaining process.

The record proves that Mack deprived the Union of the benefit of its bargain as expressed in the collective agreement. During negotiations in October of 1984, Mack proposed to replace the Blue Cross/Blue Shield health insurance plan with coverage "arranged at the Company's sole discretion, in any manner or through

any organization...." Union representative John Collins testified that the ·UAW countered by authorizing Mack to change carriers so long as the parties would delineate in the agreement the terms and conditions which any plan must contain. According to Collins, the Union had negotiated contracts with other employers, which detailed the terms and conditions of insurance coverage. When the parties realized that they would not resolve the matter before the existing contract expired, they agreed to maintain the status quo until they could agree upon the terms and conditions that would apply "to any *delivery system* other than Blue Cross/Blue Shield."

That amendment, in other words, secured the Union's right to force Mack to bargain concerning the scope of its health insurance program before changing carriers. The fact that Equitable and Blue Cross/Blue Shield benefits may be coextensive does not, therefore, excuse Mack's violation of the collective bargaining agreement. Accordingly, the district court's finding of ultimate fact that Mack's breach of contract was merely "technical" and harmless is legally erroneous. It is manifest, moreover, that the sort of harm which the Union demonstrated would (should the Union prevail) be compensable only by a permanent injunction.

### B.

Our conclusion gathers further support from the unique role which collective bargaining contracts play in the field of labor-management relations. As we recently observed in *Griesmann v. Chemical Leaman Tank Lines*, 776 F.2d 66 (3d Cir.1985), "a collective bargaining agreement differs 'in nature, scope, and purpose from the ordinary commercial contract.'" *Id.* at 71, *quoting Syufy Enter. v. Northern California State Assoc. of IATSE Locals*, 631 F.2d 124, 125–26 (9th Cir.1980) (per curiam), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981). The Supreme Court in an analogous context similarly emphasized the *sui generis* character of these contracts:

The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. [Citation omitted.] The collective agreement covers the whole employment relationship. [Footnote omitted.] It calls into being a new common law—the common law of a particular industry or of a particular plant.

... A collective bargaining agreement is an effort to erect a system of industrial self-government. When most parties enter into contractual relationships they do so voluntarily, in the sense that there is no real compulsion to deal with one another, as opposed to dealing with other parties. This is not true of the labor agreement. The choice is generally not between entering or refusing to enter into a relationship, for that in all probability pre-exists the negotiations. Rather it is between having that relationship governed by an agreed-upon rule of law or leaving each and every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–80, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960).

Consequently, the collective bargaining table will not normally seat the notion of a "technical" contract violation. Each covenant in a collective agreement represents a *quid pro quo*, and we must strictly adhere to the letter of the parties' bargain in view of the spirit which effects it: the expectation that the contract will be enforced. We need not decide, however, whether a breach of a collective bargaining agreement can ever be harmless or "technical" because the facts before us show that Mack has deprived the Union of a valuable "bargaining chip," clearly a matter of substance and not a mere "technicality."

### IV.

■ Mack insists, nonetheless, that the Norris-LaGuardia Act, 29 U.S.C. §§ 101–

115 (1982 & Supp.III 1985), precludes the issuance of a permanent injunction in favor of the Union. We hold, however, that the district court possesses jurisdiction to grant the injunction.

Section 1 of the Norris-LaGuardia Act provides:

No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.[1]

29 U.S.C. § 101 (1982). Mack cites only § 8 of the Act in attacking the district court's jurisdiction.[2]

Yet, as the Court of Appeals for the Ninth Circuit wrote in an analogous context:

We do not think that an order directing an employer to comply with a collective bargaining contract, in a setting in which none of the things described in the Norris-LaGuardia Act occurred, even though it might technically be called an injunction, is the kind of an injunction contemplated by that Act. It certainly does not fall within the purposes of the Act as stated in section 2 (29 U.S.C. § 102).

* * * * * *

In this case we have a "labor dispute," as defined in section 13, only in the most refined and technical sense. There is nothing in the complaint to suggest that either party is here using its economic powers in any way to bring pressure upon the other. Here, there is a mere disagreement as to the meaning and effect of certain terms of the contract. This we think, is not the type of "labor dispute" to which Norris-LaGuardia is directed.

*Retail Clerks Union Local 1222, AFL–CIO v. Alfred M. Lewis, Inc.*, 327 F.2d 442, 446–48 (9th Cir.1964).

Our decision in *Independent Petroleum Workers of New Jersey v. Esso Standard Oil Co.*, 235 F.2d 401 (3d Cir.1956), is likewise instructive. There, the labor union sued under 29 U.S.C. § 185 to compel, *inter alia*, specific performance of a collective bargaining agreement provision which required the employer to negotiate the salary rate for any newly established job classification. The district court held that the defendant's alleged refusal to negotiate was an unfair labor practice subject to the exclusive jurisdiction of the National Labor Relations Board and, accordingly, dismissed that count. On appeal, we reversed the district court's judgment and concluded:

If ... a particular act is the subject of an agreement between employer and union and the union sues [under Sec. 301(a)] for breach of that contract, the District Court could not be ousted of its jurisdiction to hear and determine the case mere-

---

**1.** Title 29 U.S.C. § 102 (1982) declares the public policy in labor matters:

Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of

labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definitions of and limitations upon the jurisdiction and authority of the courts of the United States are enacted.

**2.** Section 8 states:

No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has *failed to make every reasonable effort to settle such dispute either by negotiation* or with the aid of any available governmental machinery of mediation.

29 U.S.C. § 108 (1982) (emphasis added).

ly because the act constituted not only breach of contract but also an unfair labor practice.

*Id.* at 405, *quoting Reed v. Fawick Airflex Co.,* 86 F.Supp. 822, 823–24 (N.D.Ohio 1949).

As well, we noted that "the Norris-La-Guardia Act cannot be construed as an immutable and inflexible bar against injunctive relief because of the circumstance that a union is one of the parties in the litigation[.]" 235 F.2d at 404. Finally, we adopted the view of the Court of Appeals for the Sixth Circuit that "the unqualified use of the word 'suits'[3] in the Labor Management Relations Act *authorizes injunctive process for the full enforcement of the substantive rights created by section 301(a)....*" *Id., quoting Milk and Ice Cream Drivers v. Gillespie Milk Products Corp.,* 203 F.2d 650, 651 (6th Cir. 1953).

We reaffirm *Esso Standard Oil Co.* and hold that the Norris-LaGuardia Act does not bar the UAW's action for a permanent injunction.

### V.

We conclude that the district court erred in granting Mack's motion for a directed verdict and, therefore, will vacate its judgment. The Union came forward with proof that Mack's decision to change unilaterally the health insurance carrier violated the collective bargaining agreement and caused the Union substantial harm by depriving it of a bargaining chip which the Union might trade for other Mack benefits. Furthermore, nothing in the Norris-LaGuardia Act would deprive the district court of jurisdiction to award the Union a permanent injunction. However, we will not (as the UAW requests) order the district court presently to grant that relief, since the directed verdict precluded Mack from introducing evidence to counter the Union's

case. Accordingly, we will remand this case for further proceedings.

---

3.    *Suits* for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a) (1982) (emphasis added).