**DISTRICT 29, UNITED MINE WORKERS OF AMERICA; Local Union 1895 United Mine Workers of America, Plaintiffs–Appellees,**

v.

**NEW BECKLEY MINING CORPORATION, a West Virginia Corporation, Defendant–Appellant.**

**No. 89–2309.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 14, 1989.

Decided Feb. 8, 1990.

---

Mark Anthony Carter (Forrest H. Roles, Smith, Heenan & Althen, Charleston, W.Va., on brief), for defendant-appellant.

James Wilbur McNeely, Athens, W.Va., for plaintiffs-appellees.

Before MURNAGHAN, SPROUSE, and CHAPMAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

New Beckley Mining Corporation ("New Beckley") appeals the district court's issuance of a preliminary injunction that required it to hire workers from a seniority list of the former employees of Beckley Coal Mining Company ("Old Beckley"), the predecessor owner of the mine. New Beckley contends that the Norris–LaGuar-dia Act applied to the dispute here and forbade issuance of the injunction.

I

Old Beckley operated a coal mine in Raleigh County, West Virginia, until November 1987, when it filed for bankruptcy under Chapter 11 and laid off virtually all of its workforce. At that time, the United Mine Workers of America ("UMW"), which represented Old Beckley's employees, negotiated a settlement agreement with Old Beckley. That agreement obligated Old Beckley to require any transferee of the mine to hire hourly employees from a list, ranked by seniority, of laid-off Old Beckley employees. The parties have referred to the rights created by this agreement as the "panel rights" of the Old Beckley employees.

The United States Bankruptcy Court in Delaware confirmed a reorganization plan for Old Beckley, including the settlement agreement with the UMW, and the purchase of Old Beckley's mine by New Beckley. In the sales contract, New Beckley agreed to assume Old Beckley's obligations, including the promise to abide by the panel rights by hiring from the Old Beckley seniority list. New Beckley initially hired employees from the list, but later notified the UMW that it intended to stop doing so.

The UMW filed suit in state court in West Virginia, alleging a breach by New Beckley of its contractual obligations to honor the panel rights of the Old Beckley employees. The UMW sought, *inter alia*, a preliminary injunction to require New Beckley to hire employees off the seniority list. New Beckley removed the case to federal court in the Southern District of West Virginia, on grounds that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempted the state law claims filed by the UMW.

The district court issued a preliminary injunction ordering New Beckley "to adhere to the panel rights as set forth in the bankruptcy agreements when hiring any additional employees." The district court

set an injunction bond of $15,000 to compensate New Beckley in the event the injunction was later found to have been erroneously issued. New Beckley argued that a minimum of $25,000 was needed to cover the anticipated cost and damages resulting from issuance of the injunction. New Beckley apparently has complied with the injunction by hiring former Old Beckley employees from the seniority list.

## II

■ First we must address the UMW's claim of mootness. We have decided that the mootness argument has no merit. A live controversy remains, notwithstanding New Beckley's apparent compliance with the injunction. It is unclear whether New Beckley has offered jobs to all the employees on the Old Beckley seniority list. If not, the injunction apparently remains in force and requires New Beckley to hire from that list as future openings occur.

Even if New Beckley has offered jobs to all employees on the seniority list, the injunction might plausibly be read to protect against future *firings* of those workers hired from the list—except for good cause. Read that way, the injunction has a continuing impact on New Beckley.

Finally, and most importantly, New Beckley's chances of recovering under the $15,000 injunction bond depend on whether this Court refuses to uphold the issuance of the injunction. As this Court has noted, "an injunction bond ... is payable only if the preliminary injunction is found to have been wrongfully issued...." *Lever Bros. Co. v. Int'l Chem. Workers Union,* 554 F.2d 115, 120 (4th Cir.1976). The controversy over the propriety of the injunction's issuance remains very much alive. The appeal is not moot.

## III

■ The Norris–LaGuardia Act, 47 Stat. 70 (1932) (codified at 29 U.S.C. §§ 101–15), severely limits the jurisdiction of federal courts to issue restraining orders or injunctions in labor disputes. Norris–LaGuardia only covers those cases "involving or growing out of a labor dispute." 29 U.S.C. §§ 101, 107. Thus, we first must determine whether the parties' disagreement about New Beckley's refusal to honor the panel rights qualifies as a "labor dispute" under the Act.

The question whether a "labor dispute" is involved would appear relatively simple at first glance. However, the question actually is more complex and requires balancing the seemingly plain language of the Norris–LaGuardia Act against the historical background in which the statute was enacted.

The first place to which we turn is the plain language of the Act, which explains that:

The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c). That definition, read literally, appears broad enough to cover the dispute over the panel rights of the former employees of Old Beckley.

However, a number of courts, including the Fourth Circuit, have refused to find the Norris–LaGuardia Act applicable in certain circumstances even when the controversy fell within the literal definition of "labor dispute" in § 113(c). *See Parks v. Int'l Bhd. of Elec. Workers,* 314 F.2d 886, 919 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *UAW v. Mack Trucks, Inc.,* 820 F.2d 91, 97 (3d Cir.1987); *Local 2750, Lumber & Sawmill Workers Union v. Cole,* 663 F.2d 983, 984 (9th Cir.1981); *De Arroyo v. Sindicato de Trabajadores Packinghouse,* 425 F.2d 281, 290–91 (1st Cir.), *cert. denied sub nom. Puerto Rico Tel. Co. v. De Arroyo,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970); *Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc.,* 327 F.2d 442, 446–47 (9th Cir.1964); *Mamula v. Satralloy, Inc.,* 578 F.Supp. 563, 575 (S.D.Ohio 1983).

Those decisions emphasize that courts must look beyond the literal language of § 113(c) to the historical context in which Norris–LaGuardia was enacted to examine the types of abuses that the Act was designed to guard against. Congress enacted Norris–LaGuardia primarily to halt a growing trend of judicial interference with labor union strikes. *See Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 707–08, 102 S.Ct. 2672, 2677–78, 73 L.Ed.2d 327 (1982); 29 U.S.C. § 102 (declaring public policy underlying Norris–LaGuardia).

The courts that have rejected a strict, literal interpretation of "labor dispute" can be read as concluding that the Norris–La-Guardia Act has no application when the activity sought to be enjoined is not a labor strike, or some action closely related to striking, such as boycotts or picketing by labor unions or lockouts by management. Thus, for example, we have held the Norris–LaGuardia Act inapplicable to an injunction forcing an international union to restore the charter of its local. *Parks*, 314 F.2d at 890–91, 919. Other circuits have held that Norris–LaGuardia does not apply when a union seeks an injunction to compel an employer to comply with the terms of a collective bargaining agreement. *See, e.g., Mack Trucks*, 820 F.2d at 93 (injunction to stop employer from unilaterally changing health insurance carrier for employees); *Retail Clerks*, 327 F.2d at 443 (injunction to force employer to provide cost-of-living adjustments promised in contract).

Under the approach adopted in *Parks*, *Retail Clerks*, and *Mack Trucks*, the controversy in the present case would perhaps not qualify as a "labor dispute" under Norris–LaGuardia because the activity to be enjoined is neither a strike nor an analogous action. However, other Fourth Circuit cases (subsequent to *Parks*), as well as recent Supreme Court decisions, have

cast considerable doubt on the propriety of departing from the literal language of § 113(c)'s definition of "labor dispute."

In three cases, the Fourth Circuit has implicitly found Norris–LaGuardia to be applicable even when the activity to be enjoined had no relation or resemblance to a strike. *See Drivers, Chauffeurs Local 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1341 (4th Cir.1978) (injunction to stop employer, which was in the process of liquidating its business, from further encumbering its capital assets pending arbitration), *cert. denied*, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 485 (1979); *Lever Bros.*, 554 F.2d at 117–18 (injunction, pending arbitration, against transfer of operations from Baltimore to Indiana); *Columbia Local, American Postal Workers Union v. Bolger*, 621 F.2d 615, 616–17 (4th Cir.1980) (injunction, pending arbitration, to prevent Postal Service from implementing certain changes at the Columbia, South Carolina, post office).[1]

Those three cases appear to conflict with the 1963 *Parks* decision. However, they are consistent with relatively recent Supreme Court decisions that seem to mandate strict adherence to the literal definition of "labor dispute."

The Supreme Court recently refused to narrow the definition of "labor dispute" found in § 113(c). *Burlington Northern R.R. v. Bhd. of Maintenance of Way Employees*, 481 U.S. 429, 441–42, 107 S.Ct. 1841, 1848–49, 95 L.Ed.2d 381 (1987). In that case the Court noted:

[W]e have long recognized that "Congress made the definition [of "labor dispute"] broad because it wanted it to be broad.... Congress attempted to write its bill in unmistakable language because it believed previous measures looking toward the same policy against nonjudicial intervention in labor disputes had been

---

1. Neither *Lever Bros.* nor *American Postal Workers* explicitly mentions the Norris–LaGuardia Act. Nonetheless, both decisions discussed whether the injunctions at issue fell within the scope of *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), which created a narrow

exception to Norris–LaGuardia in cases where the underlying labor dispute was arbitrable. By discussing *Boys Markets*, both Fourth Circuit decisions implicitly recognized that the controversy involved a "labor dispute" implicating Norris–LaGuardia.

given unduly limited constructions by the Courts."

*Id.* (quoting *Telegraphers v. Chicago & N.W. R.R. Co.*, 362 U.S. 330, 335–36, 80 S.Ct. 761, 764–65, 4 L.Ed.2d 774 (1960)). To depart from the literal definition of "labor dispute" in § 113(c) in the present case would risk thwarting congressional intent. The Supreme Court has emphasized that "[t]he critical element in determining whether the provisions of the Norris–LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals*, 457 U.S. at 712–13, 102 S.Ct. at 2680–81 (quoting *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942)). The employer-employee relationship is the matrix of the present dispute over panel rights. A literal reading of § 113(c) leads convincingly to the conclusion that here a "labor dispute" under Norris–LaGuardia is involved.

The Supreme Court has, however, recognized two narrow exceptions to the Norris–LaGuardia Act. First, injunctions are permitted in labor disputes when necessary to reconcile Norris–LaGuardia with the mandates of a specific federal statute. *Jacksonville Bulk Terminals*, 457 U.S. at 717 n. 17, 102 S.Ct. at 26 n. 17. Second, the Court will allow injunctions when necessary to accommodate Norris–LaGuardia's "strong policy favoring arbitration." *Id.*

The present case would fall within the first exception only if § 301 of the Labor Management Relations Act (LMRA), the basis for federal jurisdiction in this case, mandates issuance of the injunction. Section 301 provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Although a number of courts have held that the LMRA authorizes injunctive relief, *see, e.g., Mack Trucks*, 820 F.2d at 98, it seems clear that § 301 does not create an exception to Norris–LaGuardia. *See Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 409, 96 S.Ct. 3141, 3148, 49 L.Ed.2d 1022 (1976) (although § 301 assigns major role to courts in enforcing collective-bargaining agreements, Supreme Court has never indicated that, other than the *Boys Markets* exception, courts may issue injunctions despite Norris–LaGuardia).

The Supreme Court has established the so-called *Boys Markets* exception, whereby courts may issue injunctions in labor disputes to preserve the *status quo* pending arbitration when the underlying controversy is arbitrable under a collective bargaining agreement. *See Boys Markets, Inc. v Retails Clerks Union*, 398 U.S. 235, S.Ct. 1583, 26 L.Ed.2d 199 (1970). The *Boys Markets* exception does not apply here because no agreement has been shown to have existed between the Union and New Beckley that provides for arbitration of panel rights disputes.

Since the Norris–LaGuardia Act defines "labor dispute" to cover the panel rights dispute, we reverse and remand the case to the district court.

However, Norris–LaGuardia absolutely precludes the issuance of injunctions only in certain circumstances. Section 4 of the Norris–LaGuardia Act specifically deprives federal courts of jurisdiction to enjoin certain enumerated acts arising out of labor disputes. Although New Beckley has not argued that its refusal to honor panel rights falls within any of the nine categories of acts in § 4, 29 U.S.C. § 104(a)–(i), we must examine the applicability of § 4 to see whether New Beckley's acts, for jurisdictional reasons, may not be enjoined. Only subsection (c) of § 4 is even arguably applicable here. That subsection denies federal courts the jurisdiction to enjoin the following acts:

Paying or giving to, or *withholding from, any person participating or interested in such labor dispute,* any

strike or unemployment benefits or insurance, or other *moneys or things of value.*

29 U.S.C. § 104(c) (emphasis added).

By refusing to offer jobs to employees on the Old Beckley seniority list, New Beckley would be arguably withholding "moneys or things of value" from persons interested in a labor dispute. It is doubtful, however, that Congress intended such an expansive interpretation of "moneys or things of value." If read literally, the term would encompass nearly every failure by an employer to comply with the terms of a collective bargaining agreement. Most contract provisions that a union might seek to enforce would, in some sense, represent a "thing of value" to union members.

At least two courts have held that "moneys or things of value" must be read in the context of § 4(c)'s reference to "strike or unemployment benefits or insurance." Unless the "moneys" or "things of value" somehow relate to "strike benefits" or "unemployment insurance," § 4(c) is inapplicable. *Schuck v. Gilmore Steel Corp.,* 784 F.2d 947, 949 (9th Cir.1986); *Mamula,* 578 F.Supp. at 574.

But even if the failure to honor panel rights does not fall within one of the enumerated acts in § 4, the district court can issue no injunction without adhering to the strict procedural requirements of § 7 of Norris–LaGuardia, 29 U.S.C. § 107. The district court clearly did not follow § 7 since it did not find Norris–LaGuardia applicable. Although it is doubtful that the UMW can make the stringent showing required for an injunction under § 7,[2] the Union should be given a chance to try. That possibility will exist, if the UMW so desires, on remand.

Finally, the district court did not abuse its discretion in setting the injunction bond at $15,000. While New Beckley argues that the $15,000 bond would not adequately cover its costs and damages resulting from the erroneous issuance of the injunction, there is nothing amounting to proof of an

abuse of discretion in the fixing by the district court of the amount of the bond's penalty.

REVERSED AND REMANDED.

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent. In my view, the controversy between these parties does not amount to a "labor dispute" under the meaning assigned to that term by Congress when it enacted the Norris–LaGuardia Act. The injunction was issued to avoid the violation of a contract executed by the Union and New Beckley settling, among other things, the bankruptcy claims its members asserted as individual creditors in a bankruptcy proceeding. The Bankruptcy Court had adopted that contractual settlement as part of the plan reorganizing Old Beckley.

The majority recognizes many of the cases both from this and sister circuits holding that the language of sections 4 and 13(c) of the Norris–LaGuardia Act, 29 U.S.C. §§ 104, 113(c), must be interpreted in light of its legislative history. That history discloses a congressional purpose to protect union activity from unwarranted interference from federal judges who refused to recognize previously expressed congressional policy preventing injunctions against strike activity. *See,* among others, *Parks,* 314 F.2d at 917–19; *UAW v. Mack Trucks,* 820 F.2d at 96–98; *De Arroyo,* 425 F.2d at 291; *Retail Clerks v. Lewis,* 327 F.2d 446–48. The majority, however, holds in effect that these cases have been overruled by *Jacksonville v. Longshoremen,* 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1981), and *Burlington Northern v. Maintenance Employees,* 481 U.S. 429, 107 S.Ct. 1841, 95 L.Ed.2d 381 (1986). I simply cannot read these two Supreme Court cases as having that effect. In *Jacksonville,* the Supreme Court, after holding that the reviewed controversy did not permit an injunction under the required-arbitration doctrine of *Buffalo Forge,* held that, even though the refusal to load Soviet ships was politically motivated, the dispute neverthe-

---

**2.** Perhaps the biggest hurdle would be to show that "unlawful acts have been threatened." 29

U.S.C. § 107(a).

less involved a refusal to work sanctioned by the union. Significantly, in disallowing an injunction to the employer against the union's failure-to-work activities, the court reiterated its understanding of the congressional purpose in enacting the Norris–LaGuardia Act:

> Congress adopted this broad prohibition to remedy the growing tendency of federal courts to enjoin strikes by narrowly construing the Clayton Act's labor exemption from the Sherman Act's prohibition against conspiracies to restrain trade....

*Jacksonville*, 457 U.S. at 708, 102 S.Ct. at 2678 (citations omitted).

> The Act was enacted in response to federal-court intervention on behalf of employers through the use of injunctive powers against unions and other associations of employees. This intervention had caused the federal judiciary to fall into disrepute among large segments of this Nation's population.

*Id.* at 715, 102 S.Ct. at 2681 (citations omitted).

In *Burlington,* the Court in the context of interpreting the term "labor dispute" was primarily concerned with the "substantial-alignment" doctrine applied by some lower courts to find union activity unprotected by Norris–LaGuardia unless the enjoined employers were substantially aligned economically with the primary employer. In disapproving of the "substantial-alignment" test, the *Burlington* Court held the district court did not have jurisdiction to enjoin strike activity against secondarily-targeted railroads. It is true that in this context the court stressed that the term "labor dispute" is to be broadly construed. However, the Court reiterated that the *Norris–LaGuardia* language was to be interpreted in light of the Act's legislative history. *Id.* 481 U.S. at 437–40, 107 S.Ct. at 1846–48. I would not argue, of course, that the Act only protects unions against employer instigated injunctions and not employers against union injunctions. But in interpreting whether any given circumstance involves a "labor dispute," I think it is important to remember that Congress

fashioned that term with the former setting in mind. Again, I think it significant that the court in *Burlington* stated:

> "The Norris–LaGuardia Act ... expresses a basic policy against the injunction of activities of labor unions." *Machinists v. Street,* 367 U.S. 740, 772 [81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141] (1961). Section 1 of the Act states that "[n]o court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C. § 101. Section 4 enumerates specific acts that shall not be subject to any restraining order or injunction; these include:
>
> > "(a) Ceasing or refusing to perform any work or to remain in any relation of employment;
> >
> > . . . . .
> >
> > "(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." 29 U.S.C. §§ 104(a), 104(e).
>
> The congressional debates over the Norris–LaGuardia Act disclose that the Act's sponsors were convinced that the extraordinary step of divesting federal courts of equitable jurisdiction was necessary to remedy an extraordinary problem. According to the sponsors, federal courts had refused to abide by the clear command of § 20 of the Clayton Act, which stated in part:
>
> > "[N]o ... restraining order or injunction shall prohibit any person or persons, whether singly or in concert, ... from ceasing to perform any work or labor, ... or from peaceably assembling in a lawful manner, and for lawful purposes...." 29 U.S.C. § 52.

481 U.S. at 437, 107 S.Ct. at 1846.

In short, the Supreme Court in neither *Jacksonville* nor *Burlington* retreated from the rationale that the language of sections 4 and 13 of Norris–LaGuardia is to be read in light of extensive legislative

history. Left in place is the considerable precedent, both in this and other circuits, to that effect and under the rationale of those cases, the controversy between the litigants in this case is simply not a Norris–LaGuardia labor dispute.