INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS,

v.

TENNESSEE VALLEY AUTHORITY; Tennessee Valley Trades and Labor Council; Pascal DiJames, as Administrator; Building and Construction Trades Department; American Federation of Laborors, Congress of Industrial Organization; Robert Georgine, as President.

No. 3-97-0747.

United States District Court, M.D. Tennessee, Nashville Division.

Sept. 11, 1997.

Nicholas A. Della Volpe, Knoxville, TN, Herbert S. Sanger, Jr., Knoxville, TN, for plaintiff.

Thomas F. Fine, Knoxville, TN, George Edward Barrett, Nashville, TN, Laurence J. Cohen, Washington, DC, Richard M. Resnick, Washington, DC, for Defendant.

## MEMORANDUM

CAMPBELL, District Judge.

### I. *Introduction*

Pending before the Court is Plaintiff's Motion For Preliminary Injunction (Docket No. 2). By Order entered August 11, 1997 (Docket No. 33), the Court denied Plaintiff's request for a temporary restraining order as moot and reserved decision on Plaintiff's request for a preliminary injunction (Docket No. 2). In that same Order, the Court ordered the parties to file briefs on the issue of whether the Norris–LaGuardia Act, 29 U.S.C. §§ 101, *et seq.*, applies in this case. The parties have now filed those briefs.

For the reasons set forth below, the Court concludes that the Norris–LaGuardia Act applies in this case and, accordingly, DENIES Plaintiff's request for a preliminary injunction. The issues of liability and non-injunctive relief are still before the Court.

### II. *Factual and Procedural Background*

Plaintiff, the International Association of Machinists and Aerospace Workers ("IAM"), filed this action against Defendants, Tennessee Valley Authority ("TVA"), Tennessee Valley Trades and Labor Annual Council ("Annual Council"), Pascal DiJames, Administrator of the Annual Council, Building and Construction Trades Department, AFL–CIO ("BCTD"), and Robert Georgine, President

of the BCTD. Plaintiff alleges that the Annual Council and its Administrator have breached their fiduciary duties to Plaintiff. Plaintiff further alleges that TVA and BCTD unlawfully procured a breach of contract, in violation of Tennessee Code Annotated Section 47–50–109, by causing the Annual Council and its Administrator to breach their fiduciary duties to Plaintiff. Plaintiff seeks injunctive, monetary and other relief.

Specifically, the Complaint alleges that Plaintiff and five other unions as members of the Annual Council are parties to a General Agreement with TVA, which governs the relationship between TVA and the trade and labor workers at TVA. Plaintiff alleges that the five other members of the Annual Council are also members of BCTD, and that BCTD has taken actions showing that it intends to transfer jobs that are traditionally machinists' jobs to BCTD's member unions. Plaintiff further alleges that the President of the BCTD and the Administrator of the Annual Council have met secretly with the TVA to negotiate a new General Agreement. As a result, Plaintiff alleges that the Annual Council has breached its duty to fairly represent IAM, and that BCTD and TVA have caused that breach.

Plaintiff requested a temporary restraining order to enjoin Defendants from interfering with its interests in the negotiations to renew the General Agreement. As noted above, by Order entered August 11, 1997 (Docket No. 33), the Court denied Plaintiff's request for a temporary restraining order as moot because Defendants had advised the Court that the negotiations regarding the General Agreement had been suspended indefinitely, subject to being recommenced at an indefinite time in the future.

### III. *Analysis*

█ Defendants contend that under the Norris–LaGuardia Act, 29 U.S.C. §§ 101, *et seq.* ("NLA"), the Court does not have jurisdiction to order injunctive relief in this action. Plaintiff argues, on the other hand, that the NLA does not apply to this case.

Section 101 of the NLA provides that:

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

Section 104 of the NLA prohibits the issuance of injunctive relief as to nine specifically described actions.[1] Other actions may only be enjoined if the court strictly complies with the requirements of the statute.

The NLA was enacted in 1932 to curb the tendency of the federal courts at that time to enjoin strikes by labor unions under the antitrust laws. *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association,* 457 U.S. 702, 707–09, 102 S.Ct. 2672, 2678, 73 L.Ed.2d 327 (1982). The Supreme Court "has consistently given the anti-injunction provisions of the Norris–LaGuardia Act a broad interpretation, recognizing excep-

---

1. Those nine actions are:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;
(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;
(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;
(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;
(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;
(f) *Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;*
(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;
(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and
(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

29 U.S.C. § 104 (emphasis added).

tions only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy." *Id.*

In that regard, the Supreme Court has recognized exceptions to the NLA's requirements in those cases in which: (1) an injunction accommodates the strong federal policy in favor of arbitration, *see, e.g., Boys Markets Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); and (2) the NLA must be reconciled with some other federal statute. *Id.; Jacksonville Bulk Terminals, Inc.,* 457 U.S. at 718 n. 17, 102 S.Ct. at 2682 n. 17.

Plaintiff does not argue that this case falls within one of these exceptions. Rather, Plaintiff argues that this case does not fall within the definition of a labor dispute.

The term "labor dispute" is defined in Section 113 of the NLA:

(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or *(3) between one or more employees or associations of employees and one or more employees or associations of employees;* or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

\*        \*        \*        \*        \*        \*

(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not*

*the disputants stand in the proximate relation of employer and employee.*

The Supreme Court has explained that the "critical element in determining whether the provisions of the Norris–LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals,* 457 U.S. at 712, 102 S.Ct. at 2680 (quoting *Columbia River Packers Ass'n., Inc. v. Hinton,* 315 U.S. 143, 146, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942)).

Despite the broad language of the statute in defining a labor dispute, Plaintiff argues that the statute should be construed narrowly and applied only to accomplish its historical purpose. Although there are a number of cases that have followed that approach, it is not clear that the analysis used in those cases is still viable. For example, in 1963, the Fourth Circuit Court of Appeals held that an injunction restoring the charter of a local union after revocation by the international union was not prohibited by the NLA. *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 917–19 (4th Cir.1963). In reaching its decision, the court explained that while the case may fall within the definition of "labor dispute" set forth in the Act, the requested injunction would not contravene the purposes of the Act, and did not fall within the list of prohibited relief set forth in Section 104. *Id.*

Almost thirty years later, the Fourth Circuit held that an injunction requiring a mine owner to hire workers from a seniority list of former employees of the predecessor mine owner was prohibited by the NLA. *District 29, United Mine Workers of America v. New Beckley Mining Corp.,* 895 F.2d 942, 944–47 (4th Cir.1990). In *District 29,* the court explained that although several cases have held that the term "labor dispute" should be limited to strike activity, more recent cases "have cast considerable doubt on the propriety of departing from the literal language of § 113(c)'s definition of 'labor dispute.'" 895 F.2d at 945.

Other circuits have also adopted a more literal reading of the NLA in recent years. *Compare Int'l Union, UAW v. Mack Trucks, Inc.,* 820 F.2d 91, 97–98 (3rd Cir.1987) (NLA

does not apply to an injunction requiring an employer to comply with a collective bargaining agreement with regard to the selection of health care insurers), *with Lukens Steel Co. v. United Steelworkers of America (AFL–CIO)*, 989 F.2d 668, 675–79 (3rd Cir. 1993)(NLA applies to injunction prohibiting arbitration; analysis in *Mack Trucks* is inconsistent with broad construction used by Supreme Court). *Compare Retail Clerks Union Local 1222, AFL–CIO v. Alfred M. Lewis, Inc.*, 327 F.2d 442, 446–48 (9th Cir.1964)(injunction requiring employer to comply with collective bargaining agreement with regard to cost of living wage adjustment was not prohibited by NLA because not prohibited by Section 104, and constitutes "labor dispute" only in the most technical sense), *with Camping Construction Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1341–47 (9th Cir.1990)(injunction against arbitration prohibited by NLA, which is to be given broad construction and is not limited to enjoining strikes or other disruptive conduct). *Compare Drywall Tapers and Pointers of Greater New York, Local 1974 v. Operative Plasterers' and Cement Masons' Int'l Ass'n*, 537 F.2d 669, 673–74 (2d Cir.1976)(NLA did not apply to dispute between unions regarding work assignments because the relief did not infringe upon the workers' organizational rights, and therefore, the case does not involve the abuses the NLA was enacted to prevent), *with Local 1814, Int'l Longshoremen's Ass'n, AFL–CIO v. New York Shipping Ass'n. Inc.*, 965 F.2d 1224, 1231–39 (2d Cir.1992) (NLA applied to request by local union to enjoin employers' organization from finalizing RICO consent judgment with government; court stated that "recent Supreme Court decisions command strict adherence to the literal definition of 'labor dispute.' ").

The most recent decisions of the Supreme Court under the NLA have made it clear that the Act is to be broadly construed. In *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n*, 457 U.S. at 709–13, 102 S.Ct. at 2679–80, the Court held that the NLA was not limited to the enjoining of strikes motivated by economic interest. Politically-motivated strikes, the Court concluded, also fall within the definition of the term "labor dispute" because the NLA is to be given a broad construction:

> Our decisions have recognized that the term 'labor dispute' must not be narrowly construed because the statutory definition itself is extremely broad and because Congress deliberately included a broad definition to overrule judicial decisions that had unduly restricted the Clayton Act's labor exemption from the antitrust laws.

*Id.*

Five years later, the Court again declined to narrowly construe the term "labor dispute." In *Burlington Northern Railroad Co. v. Brotherhood of Maintenance of Way Employes*, 481 U.S. 429, 435–44, 107 S.Ct. 1841, 1846–50, 95 L.Ed.2d 381 (1987), the Court held that the district court had no jurisdiction under the NLA to enjoin secondary picketing of railroads by a national union of railroad employees.

As for the factual scenario involved here—a union requesting an injunction prohibiting other unions and the employer from negotiating without its participation—several courts have found similar disputes to constitute a "labor dispute" under the NLA. In *Bodecker v. Local Union No. P–46*, 640 F.2d 182, 185–86 (8th Cir.1981), the Eighth Circuit held that a suit by union members against their union and their employer seeking to enjoin implementation of an amendment to the collective bargaining agreement was a "labor dispute."

The Court of Appeals for the District of Columbia has also held that the NLA applies to disputes between unions. *Green v. Obergfell*, 121 F.2d 46, 50–53 (D.C.Cir.1941); *Fur Workers Union, Local No. 72 v. Fur Workers Union*, 105 F.2d 1, 5–8 (D.C.Cir.1939). In *Green*, the brewery workers union sued the teamsters union and a parent labor organization to enjoin the transfer of drivers of brewery trucks from the brewers union to the teamsters union. 121 F.2d at 48–50. In considering the applicability of the NLA, the court stated that "[i]t would be difficult to imagine a case which more clearly involves a labor dispute within the meaning of the Norris–LaGuardia Act." 121 F.2d at 50.

The *Green* court specifically relied on the language of Section 113(a)(3), which provides that a labor dispute may involve a dispute between one or more associations of employees. 121 F.2d at 51. That language, the court reasoned, undermined plaintiffs' suggestion that the term "labor dispute" only applies if the parties stand in the relation of employer and employee. 121 F.2d at 50.

This Court agrees with the reasoning of the *Green* court. The language of Sections 113(a)(3) and (c) clearly describe a dispute like that involved here, *i.e.* one union seeks to require other unions and the employer to use certain procedures in negotiation. Furthermore, based on the more recent case law discussed above, the Court declines to limit application of the NLA to cases involving strike activity. Accordingly, the Court concludes that this case is governed by the provisions of the NLA because it involves a "labor dispute."

■ Determining that the NLA applies, however, does not end the inquiry. As noted above, the Act provides that some actions may not be enjoined under any circumstances, and that other actions may be enjoined only if the court follows the specific procedures set forth in the Act. Defendants contend that the injunction requested by Plaintiff is prohibited by Section 104 because it seeks to prohibit "assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute" within the meaning of subsection (f). 29 U.S.C. § 104(f).

In its motion for preliminary injunction, Plaintiff seeks to enjoin the Defendants: "from taking any further actions interfering with or hindering the interest of the Machinists during the current negotiations for renewal and revision of the General Agreement between TVA and defendant Tennessee Valley Trades and Labor Annual Council ("Annual Council")." (Motion For Temporary Restraining Order, at 1). Specifically, Plaintiff requests that the injunction prohibit:

(1) attempts by defendant TVA to negotiate separately with defendant BCTD, which is not a signatory or party to the General Agreement, and prohibit TVA from attempting to dictate the form or effect of any signatory union's representation;

(2) attempts by defendant BCTD to influence, dominate or control the defendant Annual Council, or to change the manner or weight of any union voting, or to prescribe rules to be followed by the Annual Council in negotiations with TVA, or to cause the Annual Council to breach its fiduciary duties of loyalty and of fair representation to the Machinists; and

(3) actions by said defendant Annual Council which dilute or hinder the effectiveness of the Machinists vote or bargaining position.

(Motion, at 1–2).

The Court is persuaded that the effect of this requested injunctive relief would prohibit the Defendants from "assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute."

Plaintiff argues that the requested injunction does not involve activity specifically prohibited by Section 104 because Plaintiff is seeking, through the injunction, to protect its right of representation in collective bargaining. That Plaintiff may be seeking to protect that right, however, does not permit the Court to enjoin the Defendants from "assembling peaceably to act" under the NLA. There is no exception to the NLA for this type of dispute.

Accordingly, the Court concludes that it is without jurisdiction under the NLA to issue the injunctive relief requested by Plaintiff. Consequently, this case will proceed only as to liability and damages issues other than the injunctive relief requested by Plaintiff in the Complaint.

### IV. *Conclusion*

Plaintiff's Motion For Preliminary Injunction is DENIED. The preliminary injunction hearing set for September 19, 1997 is CANCELLED.

It is so ORDERED.