**MINARETA THOMPSON, Plaintiff**

v.

**TOLUAO FETALAIGA, SEUTA'ATIA TOLUAO,
and DOES 1 through 10, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 52-92

August 24, 1993

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, and BETHAM, Associate Judge.

Counsel: For Plaintiff, Afoa L. Su'esu'e Lutu
For Defendants, Asaua Fuimaono

Trial of this action brought by plaintiff Minareta Thompson ("Minareta") for a permanent injunction preventing interference with her use and enjoyment of certain land was held on July 22, 1993. Minareta appeared in person and by counsel. Defendants Toluao Fetalaiga

("Toluao") and Seuta'atia Toluao ("Seuta'atia") also appeared in person and by counsel. The court viewed the land in question and the surrounding area on August 10, 1993.

## FINDINGS OF FACT

In 1989, Minareta cleared a small parcel, approximately 0.509 acres, of land ("the small parcel") in preparation for constructing a new home for her present, immediate family. Minareta is a member of the extended Moananu family of the Village of A'oloau, American Samoa. She lived with her parents and other family members on the small parcel and immediately surrounding land during a substantial portion of her childhood until the time she left American Samoa for further education. However, on at least two occasions during the clearing work, Toluao, the senior matai or sa'o of the extended Toluao family of the neighboring Village of Pava'ai'i, told Minareta not to proceed with construction, claiming the small parcel was the Toluao family's communal land.

The small parcel is within a larger portion of land, approximately 2.0803 acres and known as "Saiaulama-Fita." .
"Saiaulama-Fita" is within and near the mid-point of the eastern boundary of an even larger area of approximately 353.8697 acres, which was surveyed in 1985 by matais of the Village of A'oloau and designated as "A'oloau-fou, Parcel B-One" ("the A'oloau survey"). The A'oloau survey also included a separate parcel of approximately 66.6936 acres, designated as "A'oloau-fou, Parcel B-Two." A substantial area in the eastern and southern portions of "Parcel B-One" of the A'oloau survey is also within another large area, generally known as "Lago." This portion of "Lago," consisting of some 69.403 acres, was surveyed by matais of the Village of Pava'ia'i in 1988 ("the Pava'ai'i survey").

In 1989, resolution of the A'oloau survey with the Pava'ai'i survey, among other issues, was before this court in consolidated actions LT No. 29-86, LT No. 41-86, and LT No. 12-87. The Village of A'oloau was a plaintiff, and Toluao was the defendant in LT No. 12-87. Toluao, other village matais, and the Village of Pava'ai'i intervened in LT No. 29-86, although their real interest was in the portion of "Lago" within the A'oloau survey, the registration of which was the subject of

LT No. 41-86.[1] Upon the advice of the Village of A'oloau's legal counsel, Minareta decided to delay her construction project until the outcome of these consolidated cases was known.

As relevant to this action, the court held that almost all of the land within the A'oloau survey that is also within the Pava'ai'i survey is within the Village of A'oloau and, therefore, is subject to title registration by families and others from A'oloau who own land communally or individually. *Lualemana v. Asifoa*, 16 A.S.R.2d 34, 38-39 (Land & Titles Div. 1990), *aff'd Asifoa v. Lualemaga*, 21 A.S.R.2d 91 (App. Div. 1992).

The exception was a small strip of apparently uncultivated land along the eastern boundary of the A'oloau survey on the eastern slope of an 1183-foot peak and located immediately uphill from a cinder pit. The cinder pit was held to be separate communal properties of the Tuana'itau and Toluao families of Pava'ai'i in *Leomiti v. Toluao*, 11 A.S.R.2d 49, 53 (1989). The small parcel is clearly within the A'oloau survey and is well-removed from the excepted strip of land.

Moreover, Minareta and members of the Toluao family are not immediate neighbors. The Fuimaono, Leota and Lefotu families of the Village of A'oloau occupy the lands immediately bordering "Saiaulama-Fita."

After the decision in the consolidated cases was issued on August 6, 1990, Minareta returned to her construction project. On May 18, 1992, title to "Saiaulama-Fita" was duly registered with the Territorial Registrar as Minareta's and Moananu Va's individually owned land. Moananu Va is the sa'o of the extended Moananu family. On August 13, 1992, the small parcel was conveyed to Minareta as her individually owned land by Moananu Va and herself, and the deed was duly registered or recorded with the registrar.

---

[1] The Pava'ai'i matais had missed the statutory 60-day deadline for filing objections to the proposed title registration of the A'oloau survey and, rather than alleging lack of notice in Pava'ai'i as an excuse for their untimely objection, sought intervention through LT No. 29-86, an injunctive relief action. Hearing no objection, the court allowed this intervention and proceeded on its merits, even though LT No. 29-86 dealt with land at the western end of the A'oloau survey not claimed by the Pava'ai'i matais.

In late September of 1992, Minareta commenced actual construction of her new home on the small parcel. Almost immediately, she was stopped by Toluao once and by Seuta'atia on two occasions. Seuta'atia was particularly aggressive and made at least implied threats of physical violence. Some members of her construction crew were convinced that Seuta'atia carried firearms in the vehicle he was driving to the construction site. Faced with reluctant carpenters and rather than confront Toluao and Seuta'atia by continuing construction, Minareta opted to protect her legal rights through this proceeding.

On November 18, 1992, the court ordered issuance of a preliminary injunction upon the filing a written undertaking. This injunction, prohibiting interference by any means with the construction of Minareta's house, was issued on December 1, 1992. When Minareta resumed construction, Toluao and Seuta'atia once more came to the site and told her to stop construction. Seuta'atia's manner was again threatening and suggested physical violence as a consequence. Police were called and shown the preliminary injunction. On December 8, 1992, contempt proceedings were commenced, and on December 23, 1992, Toluao and Seuta'atia were held in contempt.[2] A $3,000 fine was

---

[2] The decision of August 6, 1990, in the consolidated cases also declared that another portion of the land, about 2.076 acres within the A'oloau survey and south of the contested parcel of land in this case, was the communal land of the Utu family (represented by Lepuapua Stanley Massey Utu). The court enjoined Toluao from further activities within the A'oloau survey area. As amended on August 9, 1990, Toluao and the Toluao family were given until September 10, 1990, to harvest their crops within the A'oloau survey; but Toluao and the Toluao family, acting principally through Pepe Lam Yeun, continued to occupy and cultivate the Utu family land. On April 24, 1991, when both were in court, Toluao and Lam Yeun were held in contempt. Although their counsel at that time, a legal practitioner or his unlawfully practicing associate, may have misled Toluao and Lam Yeun into thinking the decision in the consolidated cases was not final, their contemptuous conduct continued unabated, even after Toluau's present counsel was retained on or about September 14, 1992. On October 7, 1992, sanctions were imposed for their continuing contempt. These contempt proceedings in the consolidated actions clearly confirm that Toluao was well aware of the significance of the August 6, 1990, decision with respect to the A'oloau survey when the hearing on issuance of a preliminary injunction took place in this case on November 16, 1992.

imposed, but execution was suspended on the condition that they comply with the preliminary injunction. They were required to pay Minareta's counsel $100 in attorney's fees.

In January 1993, Minareta once again began construction of her new home, without further direct interference by Toluao or Seuta'atia. Seuta'atia did complain that the fence Minareta had erected around her house was too close to a dirt road, crossing a small portion of the contested parcel of land and accessing the cinder pit on the communal lands of the Toluao and Tuana'itau families. However, apparently this dispute was satisfactorily resolved.

Nonetheless, Minareta believes that incidents of vehicles exiting from the dirt road with excessive noise and flying dust are attributable to Toluao family members and vehicles and are intentional acts of harassment. She fears further retaliation from Toluao and other Toluao family members. Indeed, Toluao testified that he might be unable to resist disobedience of any court order to refrain from interfering with Minareta' use and enjoyment of the contested parcel of land if "the devil takes over" control of him.

Minareta also presented evidence of her financial losses resulting from Toluao's and Seuta'atia's conduct. Since she was unable to remove her building materials from the American Samoa Government's port facilities for an extended period of time, she incurred and was billed for $17,600 in storage charges. The prospect of this financial detriment as a result of Toluao's and Seuta'atia's interference with the construction was brought out at the hearing on issuing a preliminary injunction. However, because of this litigation, the government settled this account for $1,500, representing charges to the time of filing this action. Apparently, she is satisfied with this resolution of that problem.

She also paid her carpenters an additional $5,000 due to the delay in proceeding with the work and their giving up other contracts from October 1992 to January 1993. She would like to recoup this expense. Both of these cost items, excess storage and carpenters charges, are reasonably foreseeable effects of Toluao's and Seuta'atia's interference with Minareta's construction project.

Other than moderation of the characterization of their conduct, the evidence presented by both Toluao and Seuta'atia did not contradict Minareta's testimony. Particularly noteworthy, they did not present any evidence of the Toluao family's title or defects in Minareta's title to the

small parcel. Toluao's only legitimate interest in this land is retaining access to the cinder pit via the dirt road crossing a corner of the small parcel. This road has existed for a considerable period of time, perhaps from the early 1960s. However, Minareta has neither encroached, threatened to encroach, nor otherwise obstructed passage upon this road.

## CONCLUSIONS OF LAW

1. The procedurally valid title and deed registrations, in the absence of any showing of irregularity in the Territorial Registrar's certificates, clearly and unequivocally establish Minareta's title to the small parcel. *See Vaimaona v. Tuitasi*, 13 A.S.R.2d 76, 79-81 (Land & Titles Div. 1989). As between the parties to this action, this conclusion is further buttressed by the res judicata effect of *Lualemana v. Asifoa*, 16 A.S.R.2d 34 (Land & Titles Div. 1990), *aff'd Asifoa v. Lualemaga*, 21 A.S.R.2d 91 (App. Div. 1992). *Lualemana* effectively placed the small parcel within the Village of A'oloau and determined its ownership by an A'oloau landowner. Toluao was a party to that action. As a member of the Moananu family of A'oloau, Minareta was represented by the A'oloau matais, who were also parties to that action. *See Taulaga M. v. Patea S.*, 4 A.S.R.2d 186, 186-87 (Land & Titles Div. 1987).

2. As an equitable remedy, the most distinguishing prerequisite of permanent injunctive relief is the inadequacy of a remedy at law, usually in the form of money damages. A.S.C.A. § 43.1302; *see Nissan Motor Corp. v. Maryland Shipbuilding & Drydock Co.*, 544 F. Supp. 1104, 1122 (D. Md. 1952); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987); *see also Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1527 (D.C. Cir. 1984), *vacated* 471 U.S. 1113 (1985). Actual physical interference with the use and enjoyment of another's land, as occurred in this case, constitutes the most obvious and common type of nuisance and is properly subject to the issuance of a permanent injunction. *See Ramirez*, 745 F.2d at 1527-28 & nn.119-120; *Maryland Shipbuilding*, 544 F. Supp. at 1116-17, 1122 & n.21.

Minareta is entitled to an injunction permanently prohibiting Toluao and Seuta'atia, their officers, agents, servants, employees, attorneys, other family members, and those persons in active concert or participation with them from interfering with the use and enjoyment of the contested parcel of land by Minareta, her other family members, invitees, licensees, servants, and employees through the use or threatened use of physical violence, harassment, or any other means.

3. Although equity acts 'specifically, a court having equity jurisdiction will dispose of the entire controversy, granting both specific relief and damages, to avoid a multiplicity of suits. *See Samuel v. University of Pittsburgh*, 538 F.2d 991, 994 (3d Cir. 1976) (court having equity jurisdiction over injunction claim may also decide "intertwined question of restitution"); *Local 391, Int'l Brotherhood of Teamsters v. City of Rocky Mount*, 672 F.2d 376, 379 (4th Cir. 1982) (affirming district court's grant of an injunction and award of damages).

Clearly, Minareta has suffered special damages in the sum of at least $5,000, though she failed to specifically allege and pray for money damages. T.C.R.C.P. Rule 15(b) directs that issues tried with the parties' express or implied consent shall be treated as if they had been raised by the pleadings and authorizes, but does not require, amendments to pleadings to conform to the evidence. Even over objection, amendments to the pleadings should be freely made in the interest of full consideration of the merits, unless the objecting party is prejudiced by lack of notice and surprise. 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1491, at 6-7 (West, 2d ed. 1990); *see Ah Ching v. Ah Ching*, 13 A.S.R.2d 34, 37 (Trial Div. 1989) (denying a collateral, unpled claim in divorce proceedings for possible additional renumeration that might be sought by carpenters who constructed a family home under a fa'a Samoa arrangement).

Despite Minareta's focus on injunctive relief in her complaint, the prospect of money losses resulting from Toluao's and Seuta'atia's interference with her construction project was raised during the hearing on the preliminary injunction and was, in any event, a reasonably foreseeable issue. Moreover, objection was not interposed to the evidence on money damages but only during argument. An award of money damages in this case is just and is granted in the sum of $5,000.

4. The testimony during trial on Toluao's and Seuta'atia's conduct after they were held in contempt on December 23, 1992, with respect to Minareta's use and enjoyment of the small parcel, sufficiently raises for purposes of constructive contempt proceedings under H.C.R. Rules 114 and 115 the issue of setting aside the suspended execution and requiring payment of the $3,000 fine imposed for the violations of the preliminary injunction. An order to show cause will be issued, and the hearing on the order is scheduled on October 7, 1993, at 9:00 a.m.

5. A plaintiff's attorney's fees are ordinarily excluded from judgments for injunctive relief in the absence of statutory authorization

133

or special circumstances. *See Chambers v. NASCO, Inc.*, 501 U.S. ___, ___, 115 L. Ed. 2d 27, 45 (1991) (citing *Alyeska Pipeline Serv. v. Wilderness Soc.*, 421 U.S. 240, 259 (1975)); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683-84 (1983) (citing *Alyeska Pipeline*). Attorney's fees have been permitted by statute in connection with injunctions against harassment in at least one jurisdiction. *See* Cal. Civil Proc. Code § 527.6(h) (West 1985). They were awarded in a land case involving res judicata in this jurisdiction. *Taulaga M.*, 4 A.S.R.2d at 187.

Given the undue interference and harassment without any legitimate claim or color of title, recovery of attorney's fees are also appropriate in this action. In addition to her costs of suit, Minareta is awarded reasonable attorney's fees in an amount to be approved by court upon her verified application. The hearing on attorney's fees is also scheduled on October 7, 1993, at 9:00 a.m.

Judgment shall enter accordingly. It is so ordered.