

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-18-2004

# In Re: Diet Drugs

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4613

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Diet Drugs " (2004). *2004 Decisions.* Paper 1002.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1002

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 02-4613, 02-4616 and 03-1006

IN RE: DIET DRUGS (PHENTERMINE/
FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

Class Members, each of whom is
a member of the Plaintiff Class,

Appellant (02-4613)

IN RE: DIET DRUGS (PHENTERMINE/
FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

Williams Bailey Law Firm, LLP;
Blizzard, McCarthy & Nabers, L.L.P.
and Curran & Byrne, P.C., on behalf
of their clients who are Objectors
to and class members affected by
Pretrial Order No. 2663,

Appellants (02-4616)

IN RE: DIET DRUGS (PHENTERMINE/
FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

Fleming & Associates, L.L.P.,
on behalf of its clients subject
to the suspension of Fund A and/or
Fund B processing deadlines,

Appellant (03-1006)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(MDL No. 1203)
District Judge: Honorable Harvey Bartle, III

Argued December 10, 2003

Before: AMBRO, FUENTES and CHERTOFF, <u>Circuit Judges</u>

(Filed February 18, 2004)

Thomas E. Mellon, Jr., Esq.
Stephen A. Corr, Esq.
Mellon, Webster & Mellon
87 North Broad Street
Doylestown, PA   18901

*Attorneys for Appellant*
*Class Members, Plaintiff Class*

Robert E. J. Curran, Esq.
Curran & Byrne
606 East Baltimore Pike
P.O. Box 30
Media, PA   19063

*Attorney for Appellants*
*William Bailey Law Firm, LLP*
*Blizzard, McCarthy & Nabers, LLP*
*Curran & Bryne PC*

Sylvia Davidow, Esq.
George M. Fleming, Esq.
Rand P. Nolen, Esq.
Fleming & Associates
1330 Post Oak Boulevard
Suite 3030
Houston, TX   77056

Michael L. O'Brien, Esq.
1330 Post Oak Boulevard
Suite 2900
Houston, TX 77056

> *Attorneys for Appellant*
> *Fleming & Associates*

Jonathan Massey, P.C., Esq. (**Argued**)
3920 Northampton Street N.W.
Washington, D.C.  20015

> *Attorney for Appellants*
> *Consolidated Brief*

Fred S. Longer, Esq.
Arnold Levin, Esq.
Michael D. Fishbein, Esq. (**Argued**)
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA   19106

> *Attorneys for Appellees*
> *Plaintiff Class and Class Counsel*

Robert D. Rosenbaum, Esq.
Arnold & Porter
555 12th Street, N. W.
Washington, D.C.  20004

Peter L. Zimroth, Esq. (**Argued**)

3

Arnold & Porter
399 Park Avenue
New York, NY 10022-4690

*Attorneys for Appellee*
*American Home Products Corporation*

Andrew A. Chirls, Esq. (**Argued**)
Abbe F. Fletman, Esq.
Deena B. Beard, Esq.
Wolf, Block, Schoor & Solis-Cohen
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

*Attorneys for Appellee*
*AHP Settlement Trust*

OPINION

AMBRO, <u>Circuit Judge</u>

Class members who had previously settled their mass tort class actions appeal the District Court's Pretrial Order No. 2663 (PTO 2663) suspending claim processing deadlines contained in a court-approved settlement agreement. Because we conclude that the District Court acted within its discretion, we affirm.

## I. Factual Background

The original class action involved two diet drugs of American Home Products Corporation ("AHP"),[1] Pondimin and Redux (fenfluramine and dexfenfluramine,

---

[1]AHP changed its name to Wyeth in March 2002.

4

respectively). Approximately four million people took Pondimin and two million took Redux before AHP removed the diet drugs from the market in 1997 after they were found to be associated with valvular heart disease ("VHD"). In November 1999, plaintiffs and AHP executed the Nationwide Class Action Settlement Agreement (the "Settlement Agreement").[2]

The Settlement Agreement created two separate funds. A smaller fund (Fund A) was to pay for echocardiogram screening costs, additional medical services to monitor VHD, and reimbursement of diet drug prescriptions. A larger one (Fund B) was created to compensate class members for their injuries. In September 2000, the AHP Settlement Trust (the "Trust") was created to administer the claims and payments of benefits to class members.

The Settlement Agreement prescribes certain time periods within which the Trust's various claims processing functions must be completed. For example, the Trust has 30 days from the receipt of a claim for assigning a claim number and notifying the claimant of that number, determining whether the claimant needs to submit additional information and informing the claimant of it, and confirming the qualifications of any attesting physician. Furthermore, the Trust must, within 45 days from receiving a completed claim, determine whether the claimant is eligible for various benefits under the Settlement

---

[2]Final judicial approval of the Settlement Agreement was granted on January 3, 2003.

5

Agreement. The Trust was unable to meet these deadlines.

The Settlement Agreement also provides that "[a]t any time, the Court may extend any [relevant] time period for good cause shown upon application by the Parties, Trustees, Claims Administrators(s), . . . , after notice to AHP and Class Counsel." Based on this provision, the Trust moved the District Court for suspension of processing deadlines. The Trust claimed that it could not meet the deadlines because it experienced an unexpectedly high volume of claims. It also argued that it was overwhelmed with claims that lacked essential information such as claimants' names, signatures, or allegations of diet drug use.[3] On December 3, 2002, upon finding that the Trust showed good cause for the delay, the District Court, in PTO 2663, suspended deadlines for five months.[4] The District Court noted that the deadlines would be automatically reinstated on May 1, 2003. Class members appeal the District Court's order.

## II. Jurisdiction

The Trust challenges our jurisdiction, arguing that the District Court's order is not final under 28 U.S.C. § 1291. We disagree. While hardly every pretrial order in the Diet Drug cases is final, this one is.

The only issue before the District Court was whether the Trust was allowed to extend deadlines for processing claims. Contrary to the Trust's suggestion, claims for

---

[3]For example, the Trust asserts it received approximately 27,000 deficient claims for a short time period in the late summer of 2002.

[4]The deadlines have twice been extended further.

settlement benefits are not in dispute and no other order merges with PTO 2663. As there are no other issues left to be disposed, appeal of the District Court's order would not result in delay. *See Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) ("The hostility towards piecemeal appeals expressed by the final judgment rule has a strong basis in logic and practicality. Forbidding appeals from all interlocutory judgments of the district courts achieves significant savings in time and resources on the part of litigants and courts. This is so since if litigation proceeds, the intermediate ruling may lose its significance . . . .") (citing *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 123-24 (1945); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3907 (1976)). In sum, the order in question was as final as it gets; it was the determination of the only issue that was before the District Court and, therefore, is appealable under §1291.[5]

### III. Standard of Review

When the "[s]tipulation [of the parties] places into the District Court's jurisdiction ongoing authority over the Settlement, . . . with that comes the discretion necessary to exercise jurisdiction." *In re Cendant Corp. Prides Litigation*, 233 F.3d 188, 194 (3d Cir.

---

[5]Although the District Court's order expired on May 1, 2003, this case falls under an exception to the mootness doctrine, which is applicable to "cases challenging 'short term orders, capable of repetition, yet evading review.'" *Finberg v. Sullivan*, 634 F.2d 50, 55 (3d Cir. 1980) (quoting *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). Indeed the further extension of deadlines makes the case for this exception. On December 19, 2003, the District Court ordered the suspension of deadlines for the third time – until February 29, 2004.

2000). In this case, the Settlement Agreement provides that "the Court may extend any [relevant] time period for good cause shown upon application by the Parties, Trustees, Claims Administrators(s) . . . ." Thus, we review the District Court's order to extend the deadlines for abuse of discretion. Our review of the admissibility of evidence is also for abuse of discretion. *In re Merritt Logan, Inc.*, 901 F.2d 349, 359 (3d Cir. 1990).

## VI. Discussion

### A.

Class members argue that the Trust did not show good cause to extend the time period. They contend that the District Court impermissibly rewrote the Settlement Agreement by finding good cause for the delay and ordering suspension of deadlines. We disagree.

The District Court concluded that good cause was shown for extension of deadlines because it found that the delay resulted from unforeseen factors. The Court first noted that the Trust received an unexpectedly high number of claims, far out of proportion with the projections on which the Settlement Agreement was based. The District Court also pointed out that tens of thousands of incomplete claim forms were filed, which also contributed to the significant delay in processing time.

Class members do not dispute any pertinent findings by the District Court. However, they assert that the claims processing delay was also due to the incompetence

8

of a contractor the Trust hired. Thus they contend that the District Court erred because it did not in its order mention the fact that the Trust itself also contributed to the delay.

Because our review is for abuse of discretion, we will reverse if "the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987) (citing *Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738 (9th Cir. 1986)). "A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is 'left with a definite and firm conviction that a mistake has been committed.'" *Oberti by Oberti v. Bd. of Educ. of Borough of Clementon School Dist.*, 995 F.2d 1204, 1220 (3d Cir. 1993) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985)). In this case, the record indicates that incompetence of the Trust's contractor did contribute to the delay to some extent. However, the record also supports the finding that the unexpected high number of claims was a major cause for the delay. Morever, the District Court did not find that the large number of claims was the only cause for the delay. It determined that the delay was "at least in part" the result of unforeseen factors not specifically noted. Not listing them, while not helpful, need not destroy our deference to discretion well exercised for the reason noted.

In *In re Cendant Corp. Prides Litigation*, we determined that "where the parties affirmatively subjected themselves to the Court's jurisdiction by seeking its assistance in

administering the settlement and deliberately left the important dates to the Court's discretion," the District Court "had the power to modify the terms of the Stipulation originally set by the Court . . . ." 233 F.3d at 197. Likewise, class members in this case affirmatively subjected themselves to the Court's discretion by leaving the determination of what is good cause to the Court instead of defining it themselves. Given that we do not find any clear error in the District Court's expressed findings, we conclude that it acted within its discretion when it found good cause for the suspension of the deadlines.

### B.

Class members also challenge the District Court's ruling regarding the admission of evidence. Invoking Federal Rule of Evidence Rule 1006,[6] they argue that the Trust's summary of data was impermissibly admitted because they were not given access to the original database.

It is well established that "[t]he admission or exclusion of evidence is a matter particularly suited to the broad discretion of the trial judge." *In re Merritt Logan,* 901 F.2d at 359. The summary in dispute was only relevant to this case in that it contained

---

[6]The Rule reads:

> Rule 1006. Summaries
> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

information about how many claims the Trust received and thereby established that a lot more claims were filed than the Trust had anticipated. Moreover, the record shows that class members conceded during the hearing that they were not disputing the number of claims the Trust received. Given the broad discretion accorded the District Court to admit or exclude evidence, we conclude that it did not abuse its discretion in admitting the summary evidence.

*  *  *  *  *

Accordingly, we affirm the District Court's PTO 2663.

———————————————

11